IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EDWARD YUZON ABUBO, and SARANNE KAGEL ABUBO, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) ) |
| THE BANK OF NEW YORK MELLON; COUNTRYWIDE HOME LOANS, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; BANK OF AMERICA, N.A.; and DOES 1-50. | ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

CIVIL NO. 11-00312 JMS-BMK

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT, AND GRANTING LEAVE TO AMEND AS TO COUNT FIVE

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT, AND GRANTING LEAVE TO AMEND AS TO COUNT FIVE

## I. INTRODUCTION

This action arises from a January 22, 2007 mortgage refinancing transaction in which Plaintiffs Edward Yuzon Abubo and Saranne Kagel Abubo (collectively, "Plaintiffs") borrowed $1,375,000 from Defendant Countrywide Home Loans, Inc. ("Countrywide"), secured by a promissory note and mortgage on real property located at 7297 Alealea Road, Hanalei, Hawaii 96714 (the "subject property").

On October 12, 2009, the note and mortgage were assigned to Defendant Bank of New York Mellon ("BONYM"), which instituted non-judicial foreclosure proceedings, and subsequently foreclosed on the subject property. Plaintiffs filed this action on December 17, 2010 in the First Circuit Court for the State of Hawaii against Countrywide, BONYM, Mortgage Electronic Registration Systems, Inc. ("MERS"), and Bank of America, N.A. ("BANA") (collectively, "Defendants"), seeking declaratory and injunctive relief, damages, and rescission of the mortgage transaction.  The action was then removed to this court on May 12, 2011.

Before the court is Defendants' Motion to Dismiss the Second Amended Complaint ("SAC").  Based on the following, the court GRANTS the Motion with leave to amend as to Count Five.

## II. <u>BACKGROUND</u>

### A.    **Factual Background**

The SAC alleges the following relevant facts, which the court assumes are true for purposes of this Motion.  *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).

In January 2007, a Countrywide loan officer solicited Plaintiffs to refinance their loan on the subject property.  Doc. No. 18, SAC ¶ 10.  On January

22, 2007, Countrywide loaned Plaintiffs $1,375,000 for that purpose.  The loan was a "subprime," interest-only, adjustable rate loan with an initial annual interest rate of 6.25%, requiring initial monthly payments of $7,161.46.  *Id.* ¶¶ 13-14.  According to the loan application, Plaintiffs had no monthly income at that time.  *Id.* ¶ 17.  Plaintiffs "were promised by Countrywide that they would be able to afford the loan payments because their property value would increase and they would be able to refinance in a couple of years for a lower rate."  *Id.* ¶ 15.  "In the meantime, Plaintiffs were told that they could use some of the loan proceeds to make the monthly payments."  *Id.*  (Plaintiffs received approximately $397,500.00 cash out of the transaction.  *Id.* Ex. 3, at 3.)

Plaintiffs allege that they were not provided with two completed and signed copies of the Notice of Right to Cancel form as required under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.  Id.* ¶ 18.  Instead, they were given a blank copy of the form.  *Id.* Ex. 4.  Plaintiffs were also given a TILA disclosure form that stated the wrong amount financed ($1,370,207.55, rather than $1,375,000).  *Id.* ¶ 19.

The mortgage was assigned on October 12, 2009 by MERS, as nominee for Countrywide, to BONYM, "acting as Trustee of the Alternative Loan Trust 2007-HY3 Mortgage Pass-Through Certificates, Series 2007-HY3" ("2007

Loan Trust"), which is a "mortgage securitization trust and Pooling and Servicing Agreement." *Id.* ¶ 20. After being assigned the Mortgage, BONYM initiated non-judicial foreclosure proceedings on the subject property. *Id.* ¶ 23.

The SAC alleges the assignment from Countrywide to BONYM was improper in several ways. The assignment "was fraudulently signed under oath by an individual named Kevin A. Durham . . . who falsely claimed . . . to be a corporate officer of MERS." *Id.* "Instead, Mr. Durham is a well-known foreclosure factory robo-signer, and had no authority to transfer the subject Mortgage." *Id.* Moreover, MERS "had absolutely no legal authority whatsoever to assign or transfer the Mortgage to anyone." *Id.* ¶ 21. Further, the 2007 Loan Trust purportedly closed on February 28, 2007, two years before the October 12, 2009 assignment, such that BONYM had no authority to accept the Mortgage. *Id.* ¶ 22. Thus, BONYM "had no standing or contractual authority to foreclose" on the subject property. *Id.*

To begin foreclosure proceedings, BONYM issued and recorded an October 13, 2009 "Notice of Mortgagee's Intention to Foreclose Under Power of Sale" with the Hawaii Bureau of Conveyances on October 28, 2009. *Id.* ¶ 23 & Ex. 7. An auction was set for December 18, 2009. *Id.* ¶ 23. On December 17, 2009, Plaintiffs attempted to cancel the January 22, 2007 loan transaction by

sending a cancellation letter from their counsel, Gary Dubin, by certified mail to

"all current and former parties to the mortgage loan contract."  *Id.* ¶ 24 & Ex. 10.

Although many of the Defendants received the letter after the auction was held, the

letter indicates that a copy was hand delivered to the office of David Rosen,

counsel for BONYM on December 17, 2009.  *Id.*

Nevertheless, the foreclosure auction proceeded on December 18,

2009.  At the auction, BONYM purchased the subject property for $1,021,500.00,

*id.* Ex. 12 at 2, with "a credit bid."  *Id.* ¶ 26.  On March 10, 2010, BONYM

recorded a quitclaim deed to obtain title to the subject property.  *Id.* ¶ 27.  The

quitclaim deed was allegedly "fraudulently signed and recorded by a robo-signer."

*Id.* ¶ 28.  It was signed by Sandra Williams "who claimed to be the Assistant Vice

President of [BONYM]" but "is not and never has been the Assistant Vice

President of [BONYM]."  *Id.*  BONYM subsequently filed an ejectment action in

state court.  The SAC alleges that "Plaintiffs have since prevailed in that ejectment

action, which was been dismissed," *id.* ¶ 30, although there are no details in the

record regarding the reason for the dismissal.

**B.     Procedural Background**

Plaintiffs initiated this action on December 17, 2010, in the Circuit

Court of the First Circuit, State of Hawaii ("State Court").  Doc. No. 15, State Ct.

Docket, at 3.  On April 11, 2011, Plaintiffs filed a First Amended Complaint ("FAC") in State Court, and Defendants removed the action to this court on May 12, 2011.  Doc. No. 1, Notice of Removal.  On May 12, 2011, Defendants filed a Motion to Dismiss the FAC, which became moot after the parties stipulated to allow Plaintiffs to file the SAC.  *See* Doc. No. 20 (Entering Order deeming Motion to Dismiss FAC moot).

The SAC alleges six separate counts, entitled: (1) "Wrongful Foreclosure/Quiet Title Against [BONYM]"; (2) "Fraud and Rescission and Common Law Damages"; (3) "HRS Chapter 480 Rescission and Treble Damages"; (4) "Permanent Injunction"; (5) "TILA Cancellation and Rescission"; and (6) "Punitive Damages."  Doc. No. 18.  On August 29, 2011, Defendants filed their Motion to Dismiss the SAC.  Doc. No. 21.  Plaintiffs filed their Opposition on October 17, 2011, and Defendants filed their Reply on October 24, 2011.  Doc. Nos. 23 & 24.  The Motion was heard on November 7, 2011.  Supplemental memoranda were filed on November 10, 2011, and November 16, 2011.  Doc. Nos. 26 & 27.

///

///

///

# III.  STANDARDS OF REVIEW

## A.      Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id.* at 1950.

**B.**     **Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  "Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud."  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc) (emphasis in original), *superseded on other grounds by* 15 U.S.C. § 78u-4.

In their pleadings, Plaintiffs must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement.  *Id.* (citation and quotation signals omitted).  Where there are multiple defendants, Plaintiffs cannot "lump multiple defendants together" and instead must "differentiate their allegations [between defendants]."  *Destfino v. Kennedy*, 630 F.3d 952, 958 (9th Cir. 2011) (citation omitted).  However, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b); *see also In re GlenFed, Inc. Sec. Litig*, 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed."); *Walling v. Beverly Enter.*, 476 F.2d 393, 397 (9th Cir. 1973) (Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."

(citations omitted)).

A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). In considering a motion to dismiss, the court is not deciding the issue of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800 (1982).

## IV.  DISCUSSION

Defendants move to dismiss each Count of the SAC. Plaintiffs have not opposed the Motion as to claims against BANA, and as to Counts Four and Six as to all Defendants. The court first briefly addresses the unopposed arguments, and then turns to the Counts based on fraud, unfair and deceptive practices, and violations of TILA (Counts One, Two, Three, and Five).

### A.    The SAC Fails to State a Claim Against BANA

The SAC mentions BANA only once, alleging that BANA "headquartered in the State of Hawaii, purports to be the successor of Countrywide through a merger and/or acquisition." Doc. No. 18, SAC ¶ 7. The SAC alleges no facts against BANA, much less that it participated in any of the alleged

wrongdoing, or had any knowledge of any alleged fraud, deceptive acts, or TILA violations against Plaintiffs.  The SAC fails to establish the current relationship between Countrywide and BANA, and does not allege that BANA could be liable under any theory pled in the SAC against Countrywide (or any other Defendant).  Accordingly, BANA argues -- and the court agrees -- that it should be dismissed with prejudice (and, again, Plaintiffs did not respond to this argument in their Opposition).  Therefore, the Motion is GRANTED as to any claims against BANA.  BANA is dismissed without leave to amend.

## B.      Counts Four and Six Are Remedies, Not Independent Causes of Action

Defendants argue that Counts entitled "Permanent Injunction" (Count Four) and "Punitive Damages" (Count Six) are improper as they are not causes of action.  Rather, an injunction and punitive damages are potential remedies that may be awarded if Plaintiffs prevail on an affirmative, independent, cause of action.  *See*, *e.g.*, *Ramos v. Chase Home Fin.*, --- F. Supp. 2d ----, 2011 WL 3793346, at *4 (D. Haw. Aug. 25, 2011) ("[A] claim for 'injunctive relief' standing alone is not a cause of action."); *Ross v. Stouffer Hotel Co. (Haw.), Ltd.*, 76 Haw. 454, 466, 879 P.2d 1037, 1049 (1994) ("[A] claim for punitive damages is not an independent tort, but is purely incidental to a separate cause of action.").  Plaintiffs do not specifically oppose dismissal of these Counts, but maintain that they are valid

remedies for violations of other Counts of the SAC.  Doc. No. 23, Pls.' Opp'n at

13.

Accordingly, the court DISMISSES Counts Four and Six without

leave to amend.  If injunctive relief or punitive damages are proper, it will be

because Plaintiffs prevail on an independent cause of action.  Separate Counts are

not necessary and are duplicative.[1]

## C.    Count One -- Quiet Title

Count One alleges that Plaintiffs hold superior title to the subject

property because the non-judicial foreclosure was wrongful and the subsequent

transfer of title to BONYM is void and unenforceable.  Doc. No. 18, SAC ¶ 31.

Specifically, Count One alleges that the transaction was procured (a) "by mortgage

fraud" and "in violation of Federal and State law, including [HRS Ch. 480]";

(b) "by failing to conduct its nonjudicial foreclosure pursuant to the mandatory

statutory procedural requirements set forth in [HRS] Chapter 667"; (c) "in

disregard of Plaintiffs' [October 17, 2009 cancellation letter] in violation of

TILA"; (d) "by fraud in the execution and recordation of the Assignment of

Mortgage to [BONYM]"; and (e) "by fraud in the execution and recordation of the

---

[1] Defendants make a similar argument as to declaratory relief.  But the SAC does not contain a separate Count for declaratory relief.  Although other Counts of the SAC seek, among other relief, a declaration regarding title and voiding or rescinding the loan transaction, the court addresses such relief when reviewing the individual Counts.

Quitclaim Deed to [BONYM].”  *Id.* ¶¶ 31(a)-(e).  It alleges that “Plaintiffs are

therefore entitled to have said title transfer . . . set aside and stricken, and actual

damages awarded, including attorneys’ fees and costs[.]”  *Id.* ¶ 32.

   Initially, the SAC contains no factual allegations describing how any

Defendant failed to follow any procedure in HRS Chapter 667.  Otherwise, Count

One largely depends upon prevailing on (and thus duplicates) Counts Two (Fraud),

Three (HRS Ch. 480), or Five (TILA).  Plaintiffs appear to be seeking to “quiet

title” if the transfer of title to BONYM is set aside by prevailing on other Counts of

the SAC.  To the extent that Count One seeks relief independent of Counts Two,

Three, or Five, the court infers that Plaintiffs are making a claim under HRS § 669-

1(a) (“[Quiet title] [a]ction may be brought by any person against another person

who claims, or who may claim adversely to the plaintiff, an estate or interest in real

property, for the purpose of determining the adverse claim.”).

   But to state a claim for “quiet title” against a mortgagee, a borrower

must allege they have paid, or are able to tender, the amount of indebtedness.  As

the court has reiterated in recent orders,

> “A basic requirement of an action to quiet title is an
> allegation that plaintiffs ‘are the rightful owners of the
> property, *i.e.*, that they have satisfied their obligations
> under the deed of trust.’”  *Rosenfeld v. JPMorgan Chase
> Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010)
> (quoting *Kelley v. Mortg. Elec. Registration Sys.*, 642 F.

Supp. 2d 1048, 1057 (N.D. Cal. 2009)).  "[A] borrower may not assert 'quiet title' against a mortgagee without first paying the outstanding debt on the property."  *Id.* (applying California law -- *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707, 33 Cal. Rptr. 2d 288, 290 (1994) ("a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee") (citation omitted), and *Rivera v. BAC Home Loans Servicing, L.P.*, 2010 WL 2757041, at *8 (N.D. Cal. July 9, 2010)).

*Ramos*, 2011 WL 3793346, at *15.  *See also, e.g., Hoilien v. Bank of Am.*, 2011 WL 2518731, at *13 (D. Haw. June 23, 2011) (same).

Plaintiffs have not indicated that they have paid their outstanding loan balance, much less that they are able to do so.  They argue that they "tendered" amounts due by stating so in their counsel's December 17, 2009 "cancellation letter."  The letter, however, did not actually tender the loan amount, and nothing in the SAC itself indicates that Plaintiffs have since paid their loan balance or that they are able to do so now.

Accordingly, Count One is DISMISSED without leave to amend.

**D.    Count Two  -- "Fraud and Rescission"**

Defendants argue that Count Two fails for lack of particularity under Federal Rule of Civil Procedure 9(b).  Count Two -- incorporating by reference other factual allegations in the SAC -- alleges two theories:  First, that the note and mortgage "are void and unenforceable as procured by fraud," and second, that the

note and mortgage were "assigned and transferred by deceit and misrepresentation in the execution and recordation of the Assignment and Quitclaim Deed."  Doc. No. 18, SAC ¶ 33.  The court addresses each theory in turn.

### 1.      *"Procured by Fraud"*

As to Plaintiffs' first theory of fraud, the SAC pleads no facts that could constitute fraud in the *origination* of the loan transaction, much less any facts with particularity as required by Rule 9(b).  Nothing alleges, for example, that the terms of the loan were falsely represented to Plaintiffs, or terms were changed without their knowledge.  Nothing indicates that Plaintiffs did not know that they were signing mortgage documents, so as to constitute fraud in the factum.  *See*, *e.g.*, *Beazie v. Amerifund Fin., Inc.*, 2011 WL 2457725, at *10 (D. Haw. June 16, 2011) ("To establish that [a] mortgage transaction is void for fraud -- and can be cancelled against a bona fide purchaser . . . [a] Plaintiff must establish fraud in the factum.").  And nothing indicates Plaintiffs lacked the capacity to enter into the loan transaction.  *See*, *e.g.*, *Skaggs v. HSBC Bank USA, N.A.*, 2011 WL 3861373, at *11 (D. Haw. Aug. 31, 2011) (indicating that lack of capacity is a defense to enforcement of the note and mortgage by a holder in due course).  At best, the SAC alleges that Plaintiffs were qualified for a loan that they could not afford -- conduct which is not fraudulent.  *See*, *e.g.*, *Phillips v. Bank of Am.*, 2011 WL 240813, at

*10 (D. Haw. Jan. 21, 2011) (stating that "lenders generally owe no duty to a borrower not to place borrowers in a loan even where there was a foreseeable risk borrowers would be unable to repay") (citation and quotation marks omitted); *Sheets v. DHI Mortg. Co.*, 2009 WL 2171085, at *4 (E.D. Cal. July 20, 2009) (reasoning that no duty exists "for a lender 'to determine the borrower's ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's'") (citation omitted).

Although the SAC alleges that Countrywide promised Plaintiffs "that they would be able to afford the loan payments because their property value would increase and they would be able to refinance in a couple of years for a lower rate," Doc. No. 18, SAC ¶ 15, such a statement cannot form the basis of a claim for fraud.  *See Pancakes of Haw., Inc. v. Pomare Props. Corp.*, 85 Haw. 300, 312, 944 P.2d 97, 109 (Haw. App. 1997) ("The false representation [for purposes of fraud], to be actionable, must relate to a past or existing material fact, and not to the happening of future events.  Generally, fraud cannot be predicated upon statements that are promissory in their nature at the time they are made and that relate to future actions or conduct.") (quoting *Honolulu Fed. Sav. & Loan Ass'n v. Murphy*, 7 Haw. App. 196, 201-02, 753 P.2d 807, 811-12 (1988) (editorial marks omitted)).

In short, Count Two fails to state a claim for fraud under Plaintiffs' first theory.

### 2. *"Assigned and Transferred by Deceit and Misrepresentation"*

Plaintiffs contend the assignment of the subject mortgage from Countrywide to BONYM was fraudulent, such that BONYM "had no standing or contractual authority to foreclose" on the subject property. Doc. No. 18, SAC ¶ 22. The SAC alleges three grounds for the mortgage being assigned by "deceit and misrepresentation:" (1) the October 12, 2009 assignment was signed by Kevin A. Durham ("Durham"), who allegedly is not an officer of MERS, and is instead a "well-known foreclosure factory robo-signer" who had "no authority to transfer the subject Mortgage," *id.* ¶ 20; (2) "MERS as a nominee who was never a party to the Note had no authority to do anything other than record the Mortgage," *id.* ¶ 21; and (3) BONYM, as Trustee of the 2007 Alternative Loan Trust, "had no authority to accept" the Mortgage on October 12, 2009 because doing so violated the Pooling and Servicing Agreement ("PSA") -- the Trust had closed two years earlier, on February 28, 2007. *Id.* ¶¶ 20, 22. None of these grounds, however, provides a basis to set aside the assignment, much less constitute fraud. The court addresses each in turn.

16

a.      *"Robo-signer" Had No Authority to Transfer Mortgage*

Initially, the court rejects Plaintiffs' unsupported allegation that "robo-signer" Durham, as Assistant Secretary of MERS, lacked authority to assign the Mortgage to BONYM.  The SAC does not provide any facts corroborating its speculative conclusion that Durham lacked such authority, and MERS has indicated that he is indeed a certified officer authorized to sign on its behalf.  Doc. No. 21, Defs.' Mot. at 11.  *See Cooper v. Bank of New York Mellon*, 2011 WL 3705058, at *13 (D. Haw. Aug. 23, 2011) (rejecting identical argument that Durham was not authorized to execute an assignment on behalf of MERS); *see also Singer v. BAC Home Loan Servicing, LP*, 2011 WL 2940733, at *2 (D. Ariz. July 21, 2011) (rejecting as unsupported an assertion that a "robosigner" unlawfully signed a substitution of trustee form).[2]  In any event, it is undisputed that MERS had authority to transfer the Mortgage to BONYM, and that the assignment was duly recorded in the Bureau of Conveyances.

b.      *Authority of MERS to Assign the Mortgage*

Likewise, Plaintiffs' contention that MERS "had no authority to do anything other than record the Mortgage" is unsupported -- indeed, it is

---

[2]  Similarly, the court rejects the argument that "robo-signer" Sandra Williams fraudulently signed the quitclaim deed on behalf of BONYM.  The SAC alleges no facts supporting its conclusion that Williams lacked authority to execute the quitclaim deed.

inconsistent with the language of the Mortgage itself, which defines and discloses

the role of MERS.  *See* Doc. No. 18, SAC Ex. 2 at 2 (defining MERS as "a

separate corporation that is acting solely as nominee for Lender . . . .  MERS is the

mortgagee under this Security Instrument); at 4 ("Borrower understands and agrees

that MERS holds only legal title to the interest granted by Borrower . . . but, if

necessary to comply with law or custom, MERS (as nominee for Lender . . .) has

the right . . . to exercise any or all of those interests, including but not limited to,

the right to foreclose and sell the Property; and to take any action required of

Lender."); and at 12 ("The Note or a partial interest in the Note (together with this

Security Instrument) can be sold one or more times without prior notice to

Borrower.").

   That is, "[i]n light of the explicit terms of the [mortgage] signed by

[Plaintiffs], it does not appear that the plaintiffs were misinformed about MERS's

role in their home loan[.]"  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d

1034, 1042 (9th Cir. 2011) (upholding dismissal of conspiracy to commit fraud

through the MERS system where "plaintiffs have not identified any representations

made to them about the MERS system and its role in their home loans that were

false and material").  Thus, the involvement of MERS in the assignment cannot be

a basis for voiding the assignment, much less for a claim of fraud.  *See*, *e.g.*,

*Fitzgerald v. Am. Sav. Bank, F.S.B.*, 2011 WL 4899939, at *8 (D. Haw. Oct. 13, 2011) ("The mortgage itself plainly states the role that MERS would play in Plaintiffs' home loan.  Plaintiffs signed the mortgage.  How this apparent disclosure somehow qualifies as a misrepresentation is unclear to the Court.").

        c.     *Alleged Violation of the PSA*

Finally, Plaintiffs fail to state a claim for fraud based on an allegation that the assignment is invalid as being made to a "closed" securitization trust in violation of the PSA.  This argument has been rejected in recent decisions by many courts -- which this court finds persuasive -- either (1) because a third party lacks standing to raise a violation of a PSA, or (2) because noncompliance with terms of a PSA is irrelevant to the validity of the assignment (or both).

For example, *Anderson v. Countrywide Home Loans*, 2011 WL 1627945 (D. Minn. Apr. 8, 2011), addressed the identical allegations that an assignment to a securitization trust was invalid because the PSA provided that the trust ceased accepting mortgages several years before the contested assignment from MERS.  *Id.* at *4.  *Anderson* concluded that "compliance with the chain of assignment mandated by a PSA was not relevant to the validity of the assignee's interest."  *Id.* (citing *Peterson-Price v. U.S. Bank Nat'l Ass'n*, 2010 WL 1782188, at *10 (D. Minn. May 4, 2010)).  It reasoned in part that there was "no authority

19

that an assignment made in contravention of a PSA is invalid." *Id*.  It also concluded that plaintiffs did not have standing to challenge the validity of the assignment because they were not parties to the PSA.  *Id.*

      Many other recent and persuasive decisions follow similar logic.  *See Greene v. Home Loan Serv., Inc.*, 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010) ("Plaintiffs are not a party to the [PSA] and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement."); *Long v. One West Bank*, 2011 WL 3796887, at *4 (N.D. Ill. Aug. 24, 2011) (rejecting argument that assignment executed after trust was closed in violation of the PSA rendered transaction invalid, reasoning that non-parties to the PSA lacked standing to challenge the assignment and "it is irrelevant to the validity of the assignment whether or not it complied with the PSA"); *Juarez v. U.S. Bank Nat'l Ass'n*, 2011 WL 5330465, at *4 (D. Mass. Nov. 4, 2011) (reasoning that plaintiff "does not have a legally protected interest in the assignment of the mortgage to bring an action arising under the PSA"); *Correia v. Deutsche Bank Nat'l Tr. Co.*, 452 B.R. 319, 324-25 (B.A.P. 1st Cir. 2011) (rejecting argument by debtors that mortgage assignment was invalid based upon non-compliance with PSA, as debtors were neither parties, nor third-party beneficiaries, of the PSA); *cf. Cooper*, 2011 WL 3705058, at *17 (dismissing breach of contract count brought by

delinquent mortgagors for breach of PSA, reasoning that mortgagors were not third-party beneficiaries of PSA and thus had no standing to enforce its terms).

In short, even assuming terms of the PSA were not followed, Plaintiffs may not set aside the assignment of the Mortgage from Countrywide to BONYM on that basis.  Count Two is DISMISSED without leave to amend.

## E.    Count Three -- HRS Ch. 480

Count Three -- based on the same factual allegations that fail to state a claim for fraud -- alleges that the Note and Mortgage (and subsequent assignment to BONYM), are void and unenforceable because "the acts complained of above [in the SAC]" constitute unfair and deceptive trade practices in violation of HRS Ch. 480.  *Id.* ¶ 35.  Count Three appears to be derivative of Count Two, and therefore fails to state a claim for the same reasons that Count Two fails to state a claim.  *See Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1232-33 (D. Haw. 2010) (relying on *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009), to find that HRS Ch. 480 claims that sound in fraud must be pled with particularity).

Moreover, to the extent Count Three is based on conduct other than fraud, it fails for other reasons as well.  Plaintiffs seek rescission of the underlying mortgage transaction under HRS § 480-12 ("Any contract or agreement in

violation of [Chapter 480] is void and is not enforceable at law or in equity"), as well as treble damages under HRS § 480-13 ("[a]ny person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by [Chapter 480] . . . [m]ay sue for damages sustained by the person, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit.").  But Count Three fails to distinguish the claim as between different Defendants -- it is unclear exactly what relief Plaintiff is asserting against each particular Defendant, where Defendants had different roles as alleged in the SAC.  For example, remedies might differ as between Countrywide (the original lender) and BONYM (the current holder).  That is, Count Three improperly groups all Defendants together.

Further, the SAC's facts regarding origination of the loan fail to state a claim for unfair or deceptive trade practices as against Countrywide (and neither of the other Defendants, MERS and BONYM, was involved in the origination of the loan).  The only basis of this claim in the SAC is that Plaintiffs were qualified for a loan that they could not afford.  But, as analyzed above, lenders owe no duty of care to borrowers when their role does not exceed that as a lender of money. *See, e.g.*, *Phillips*, 2011 WL 240813, at *10.  The allegations are insufficient to

state a claim for a violation of HRS Ch. 480.  *See Cooper*, 2011 WL 3705058, at

*16 (dismissing § 480-2 claim by borrower where allegations against lender did

not exceed scope of role as a conventional lender).

The SAC also alleges violations of TILA.  To the extent, however,

that Plaintiffs' claim under Chapter 480 purports to be based on TILA violations,

the claim is preempted.  *See, e.g.*, *Beazie v. Amerifund Fin., Inc.*, 2011 WL

2457725, at *13 (D. Haw. June 16, 2011) (reiterating that TILA preempts a claim

under HRS Chapter 480, where both are based on a lender's actions and

representations in originating the loan) (citing *Kajitani v. Downey Sav. & Loan

Ass'n*, 647 F. Supp. 2d 1208, 1220 (D. Haw. 2008)).

Accordingly, Count Three is DISMISSED without leave to amend.

## F.      Count Five -- TILA Rescission

Defendants next argue that Count Five, which seeks rescission of the

loan transaction under TILA, is time-barred or otherwise fails to state a claim.  The

court agrees that rescission under TILA is not available.

Count Five does not specify which provision of TILA has been

violated, but the court infers that Plaintiffs are invoking 15 U.S.C. § 1635(a),

which provides a right to rescind a loan transaction "until midnight of the third

business day following the consummation of the transaction or the delivery of the

information and rescission forms required under this section together with a statement containing [the required material disclosures.]"  If the required disclosures are not provided, however, the right to rescission expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first[.]"  15 U.S.C. § 1635(f).[3]  Section 1635(f) is an absolute statute of repose barring "any [TILA rescission] claims filed more than three years after the consummation of the transaction."  *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) (citing *King v. California*, 784 F.2d 910, 913 (9th Cir. 1986)).  That is, the three-year period is not subject to equitable tolling.  *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (stating that "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period," even if a lender failed to make the required disclosures).

Plaintiffs' TILA claim for rescission is based on a January 22, 2007 loan transaction.  Plaintiffs filed this action in State Court on December 17, 2010 -- nearly four years later.  Given that equitable tolling cannot apply, Defendants seek dismissal of this claim for lack of subject matter jurisdiction.  *See Miguel*, 309 F.3d at 1164 (providing that § 1635(f) "depriv[es] the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three-year . . . period").

---

[3]  A transaction is "consummated" when a consumer becomes contractually obligated. *See Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989) (citing 12 C.F.R. § 226.2(a)(13)).

Plaintiffs argue, however, that their claim is not time-barred because they attempted to rescind the transaction within the three-year period by their cancellation letter of December 17, 2009.  They contend that once they exercised their right to rescind (within the three-year period), they had an additional year from the allegedly improper refusal to rescind within which to file suit.  Because they filed suit on December 17, 2010, Plaintiffs contend Count Five is timely.

Defendants respond in two ways.  First, they admit that TILA allows a year to file suit from a refusal to cancel that violates TILA, but argue that such a suit is restricted to seeking *damages* under 15 U.S.C. § 1640(e) (providing that a claim for damages under TILA must be brought "within one year from the date of the occurrence of the violation").  In contrast, they contend that § 1635(f)'s three-year period within which to file suit for rescission is absolute.  Second, they cite to rulings from the District of Hawaii in *Takushi v. BAC Home Loans Servicing, et al.*, Civ. No. 11-00189 LEK-KSC, holding that -- regardless of whether a plaintiff sought to cancel within the three-year period -- a subsequent or intervening foreclosure sale of the subject property extinguishes a right to rescind under TILA.  *See Takushi v. BAC Home Loans Servicing, L.P.*, --- F. Supp. 2d ----, 2011 WL 3861439, at *6-7 (D. Haw. Aug. 31, 2011) (upholding on reconsideration a prior ruling that an intervening sale extinguishes a right to rescind); *Takushi v. BAC*

*Home Loans Servicing, L.P.*, 2011 WL 2610208, at *6 (D. Haw. July 1, 2011)

("[R]escission is unavailable because the Property has already been sold.").

"[T]here is a significant split among district courts that have addressed

the question whether § 1635(f) is a limitation on the time for a borrower to invoke

his right to rescission with the lender or on a borrower's right to bring a lawsuit to

enforce that right." *Barnes v. Chase Home Fin., LLC.*, --- F. Supp. 2d ----, 2011

WL 4950111, at *7 (D. Or. Oct. 18, 2011). The majority view requires suit to be

filed within three years of consummation of the loan. *Id.* at *8. *See*, *e.g.*, *Geraghty*

*v. BAC Home Loans Servicing, LP*, 2011 WL 3920248, at *3 (D. Minn. Sept. 7,

2011) (citing cases). The minority approach only requires an exercise of a right to

rescind within the period, rather than a lawsuit to enforce that right. *Barnes*, 2011

WL 4950111, at *8. The Ninth Circuit has not specifically adopted either the

majority or minority position. *Id.* at *7.

The court need not decide whether to follow the majority or minority

rule. Upon careful consideration, the court agrees with the comprehensive analysis

by U.S. District Judge Leslie E. Kobayashi in *Takushi*, 2011 WL 3861439, at *7-8,

that TILA rescission is not possible once the subject property is sold. *Takushi*

reviewed the many decisions finding that rescission is no longer possible after a

sale of the subject property. *Id.* at *8 (citing cases). It also relied on *Meyer v.*

*Ameriquest Mortgage Co.*, 342 F.3d 899, 903 (9th Cir. 2003), in which the Ninth

Circuit examined TILA's regulations and held:

> The regulation is clear: the right to rescind ends with the sale. "If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first."

*Id.* (quoting 12 CFR § 226.23(a)(3)). *Takushi* also reasoned that "[d]istrict courts

interpreting *Meyer* have treated the Ninth Circuit's interpretation of § 226.23(a)(3)

as completely terminating a borrower's right of rescission, even where the lender -

- rather than the borrower -- sold the property." *Takushi*, 2011 WL 3861439, at *8

(citations omitted).

       *Takushi* is indistinguishable from this case. As in *Takushi*, the holder

of the mortgage (BONYM) foreclosed on the property, and then purchased it at

auction. *See id.* at *1 (stating that BAC Home Loans Servicing foreclosed on the

property and purchased it at auction). As in *Takushi*, Plaintiffs sent a notice of

rescission to the foreclosing holder of the mortgage within the three-year rescission

period in § 1635(f), and before the sale of the property. *See id*. at *7. And, as in

*Takushi*, the property was sold prior to Plaintiffs' suit, which was filed outside the

three-year period. *Id.* Thus, as in *Takushi*, this court DISMISSES Count Five

seeking rescission under TILA without leave to amend.[4]

The court, however, GRANTS Plaintiffs leave to amend to file a TILA claim for *damages* based upon the allegedly wrongful refusal to rescind the transaction after Defendants received the December 17, 2009 notice of cancellation.  Plaintiffs may not, however, reassert a claim for rescission under TILA.

## G.      Leave to Amend

In their Opposition, Plaintiffs request that dismissal of any claims be without prejudice to filing an amended complaint.  Doc. No. 23, Defs.' Opp'n at 14.  The court is mindful that "[d]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by an amendment." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009).  Nevertheless, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.'"  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

---

[4]  The court is aware that the plaintiff in *Takushi* has since filed a Motion to Certify a question of state law to the Hawaii Supreme Court, *i.e.*, whether a bona fide "sale" occurs under HRS Ch. 667, where a foreclosing mortgagee purchases the property at foreclosure sale via a "credit bid."  The court, however, finds no reason not to follow *Takushi* here, nor any reason to await any decision related to whether this novel question will be certified.

Plaintiffs have already had more than one opportunity to state claims. Their SAC was filed by stipulation in response to a previous Motion to Dismiss. *See* Doc. No. 19 (letter from Plaintiffs' counsel describing the stipulation to file a SAC). The prior Motion to Dismiss raised similar, if not identical, arguments as Defendants raise in their current Motion to Dismiss. Plaintiffs filed a SAC that was significantly similar to the FAC, despite being given the opportunity to amend in response to Defendants' prior Motion to Dismiss. (The only substantive differences in the two Complaints appear to be the addition of allegations regarding Durham and the dropping of a claim for breach of fiduciary duty.) Plaintiffs have attempted to raise fairly specific theories of fraud or misrepresentation in the assignment of the Note and Mortgage, and it is apparent that further amendment based on those theories would be futile. Likewise, any viable amendment to Plaintiffs' current theory of fraud or wrongdoing in the *origination* of the transaction would necessarily be based on completely new facts -- and Plaintiffs have now had two chances to add any such facts. Accordingly, Counts One, Two, Three, Four, and Six are dismissed with prejudice and without leave to amend. To be clear, however, Plaintiffs may amend Count Five to assert a claim for TILA damages based on an alleged wrongful refusal to recognize the December 17, 2009 cancellation notice.

## V.  <u>CONCLUSION</u>

Defendants' Motion to Dismiss Second Amended Complaint, Doc. No. 21, is GRANTED.  All Counts except for Count Five are dismissed with prejudice.  Count Five is dismissed with leave to amend, as explained above. Plaintiffs may file a Third Amended Complaint by **December 15, 2011.**

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 30, 2011.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Abubo v. Bank of New York Mellon et al.*, Civ. No. 11-00312 JMS-BMK, Order Granting Defendants' Motion to Dismiss Second Amended Complaint, and Granting Leave to Amend as to Count Five