IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EDWARD YUZON ABUBO, and SARANNE KAGEL ABUBO, <br><br>　　　　Plaintiffs, <br><br>　vs. <br><br>THE BANK OF NEW YORK MELLON; COUNTRYWIDE HOME LOANS, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; BANK OF AMERICA, N.A.; and DOES 1-50. <br><br>　　　　Defendants. | CIVIL NO. 11-00312 JMS-BMK <br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**I. INTRODUCTION**

　　　　This action arises from a January 22, 2007 mortgage refinancing transaction in which Plaintiffs Edward Yuzon Abubo and Saranne Kagel Abubo (collectively, "Plaintiffs" or the "Abubos") borrowed $1,375,000 from Defendant Countrywide Home Loans, Inc. ("Countrywide"), secured by a promissory note and mortgage on real property located at 7297 Alealea Road, Hanalei, Hawaii 96714 (the "subject property"). On October 12, 2009, the note and mortgage were assigned to Defendant Bank of New York Mellon ("BONYM"), which instituted

non-judicial foreclosure proceedings and subsequently foreclosed on the subject property. Plaintiffs filed this action on December 17, 2010 in the First Circuit Court for the State of Hawaii against Countrywide, BONYM, Mortgage Electronic Registration Systems, Inc. ("MERS"), and Bank of America, N.A., seeking declaratory and injunctive relief, damages, and rescission of the mortgage transaction. The action was then removed to this court on May 12, 2011.

After various motions practice, Plaintiffs filed their Third Amended Complaint ("TAC") asserting a single claim against BONYM, Countrywide, and MERS (collectively, "Defendants") seeking damages for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, based on Defendants' alleged failure to rescind the mortgage loan upon Plaintiffs' request. Currently before the court is Defendants' Motion to Dismiss the TAC. Based on the following, the court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.

## II. BACKGROUND

**A. Factual Background**

The TAC alleges the following relevant facts, which the court assumes are true for purposes of this Motion. *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).

In January 2007, a Countrywide loan officer solicited Plaintiffs to

refinance their loan on the subject property. Doc. No. 29, TAC ¶ 8. On January 22, 2007, Countrywide loaned Plaintiffs $1,375,000 for that purpose. The loan was a "subprime," interest-only, adjustable rate loan with an initial annual interest rate of 6.25%, requiring initial monthly payments of $7,161.46. *Id.* ¶¶ 10-11. The mortgage provides that MERS "is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument." *Id.* Ex. 2.

Plaintiffs allege that they were not provided with two completed and signed copies of the Notice of Right to Cancel form as required under TILA. *Id.* ¶ 13. Instead, they were given a blank copy of the form. *Id.* Ex. 3. Plaintiffs were also given a TILA disclosure form that stated the wrong amount financed ($1,370,207.55, rather than $1,375,000). *Id.* ¶ 14.

The mortgage was assigned on October 12, 2009 by MERS, as nominee for Countrywide, to BONYM, "acting as Trustee of the Alternative Loan Trust 2007-HY3 Mortgage Pass-Through Certificates, Series 2007-HY3" ("2007 Loan Trust"), which is a "mortgage securitization trust and Pooling and Servicing Agreement." *Id.* ¶ 15.

After being assigned the Mortgage, BONYM initiated non-judicial foreclosure proceedings on the subject property. Specifically, on October 28,

2009, BONYM issued and recorded with the Hawaii Bureau of Conveyances a "Notice of Mortgagee's Intention to Foreclose Under Power of Sale," setting an auction date of December 18, 2009. *Id.* ¶ 16. On December 17, 2009, Plaintiffs attempted to cancel the January 22, 2007 loan transaction by sending a cancellation letter from their counsel, Gary Dubin, by certified mail to "all current and former parties to the mortgage loan contract." *Id.* ¶ 18 & Ex. 7. Although many of the Defendants received the letter after the auction was held, *see id.* Ex. 8, the letter indicates that a copy was hand delivered to the office of David Rosen, counsel for BONYM, on December 17, 2009. *Id.* Ex. 7.

Nevertheless, the foreclosure auction proceeded on December 18, 2009. *Id.* ¶ 19. At the auction, BONYM purchased the subject property for $1,021,500.00, *id.* Ex. 9 at 2, with "a credit bid." *Id.* ¶ 19. On March 10, 2010, BONYM recorded a quitclaim deed to obtain title to the subject property. *Id.* ¶ 20 & Ex. 10. BONYM subsequently filed an ejectment action in state court. The TAC alleges that the Abubos "have since prevailed in that ejectment action, which was dismissed" for lack of subject matter jurisdiction. *Id.* ¶ 21.

///

///

///

B.     **Procedural Background**

Plaintiffs initiated this action on December 17, 2010, in the Circuit Court of the First Circuit, State of Hawaii ("State Court").  Doc. No. 15, State Ct. Docket, at 3.  On April 11, 2011, Plaintiffs filed a First Amended Complaint ("FAC") in State Court, and Defendants removed the action to this court on May 12, 2011.  Doc. No. 1, Notice of Removal.  On May 12, 2011, Defendants filed a Motion to Dismiss the FAC, which became moot after the parties stipulated to allow Plaintiffs to file the SAC.  *See* Doc. No. 20 (Entering Order deeming Motion to Dismiss FAC moot).

Plaintiffs filed their SAC on August 12, 2011, and the court granted a subsequent Motion to Dismiss on November 30, 2011.  The November 30, 2011 Order granted Plaintiffs leave to file their TAC to assert a single claim for TILA damages based on an alleged wrongful refusal to recognize the December 17, 2009 cancellation notice.  Plaintiffs filed their TAC on December 15, 2011.

On January 3, 2012, Defendants filed their Motion to Dismiss the TAC.  Plaintiffs failed to file an Opposition (or a Statement of No Opposition).[1]  A hearing was held on June 4, 2012.

---

[1] Counsel for Plaintiffs are reminded that the filing of an Opposition (or Statement of No Opposition) is not optional.  Failure to comply with court-mandated deadlines in the future may result in the imposition of sanctions.

5

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

## IV. DISCUSSION

The TAC asserts that Defendants are liable for TILA damages for failure to properly respond to Plaintiffs' rescission of the mortgage loan. The TAC alleges:

> Because [] Plaintiffs were not provided with the mandatory TILA notice of right to cancel upon closing the loan transaction as required under 15 U.S.C. § 1635, because Plaintiffs timely provided written notice of rescission to Defendants BONY, Countrywide, and MERS, within three years of origination of the loan, and because Defendants ignored said notice, failed to rescind the subject mortgage loan, and instead moved forward with an alleged nonjudicial foreclosure to Plaintiffs' detriment, Plaintiffs are entitled under TILA, including Sections 1640 and 1641 thereof, to recover damages from Defendants based upon their wrongful failure to rescind the subject mortgage loan. . . .

Doc. No. 29, TAC ¶ 24.

Defendants argue that Plaintiff's TILA damages claim should be

dismissed because it is time-barred and is insufficiently pled as to each Defendant.[2] Based on the following, the court agrees with Defendants in part.

**A.      Statute of Limitations**

As alleged in the TAC, Plaintiffs purported to rescind the mortgage loan on December 17, 2009, and then filed this action exactly one year later on December 17, 2010.  Defendants argue that because a TILA claim for damages must be brought "*within* one year from the date of the occurrence of the violation," 15 U.S.C. § 1640(e) (emphasis added), Plaintiffs failed to timely file this action by one day.  In other words, Defendants argue that to bring this action within one year of the violation, Plaintiffs needed to file this action by December 16, 2010, and not by December 17, 2010.  The court disagrees.

A claim for damages under TILA must be brought "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  Where the alleged TILA violation is a creditor's failure to honor a borrower's rescission of the mortgage loan, a creditor has twenty days to respond to the rescission.  *See* 15 U.S.C. § 1635(b) ("Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to

---

[2] Although Defendants raised an additional argument for dismissal during the June 4, 2012 hearing, the court will not address arguments untimely raised.

reflect the termination of any security interest created under the transaction."). Thus, the date of occurrence of a TILA violation for failure to honor a borrower's rescission "is the earlier of when the creditor refuses to effectuate rescission, or twenty days after it receives the notice of rescission." *Kruse v. U.S. Bank, N.A.*, 2010 WL 331354, at *3 (D. Colo. Jan. 20, 2010) (collecting and citing cases); *Belini v. Washington Mut. Bank, FA*, 412 F.3d 17, 26 (1st Cir. 2005) (providing that where lender does not respond to rescission notice, the date of violation occurred for purposes of one-year limitations period was, at the latest, the twentieth day after lender received notice); *Cook v. Wells Fargo Bank*, 2010 WL 1289892, at *3 (S.D. Cal. Mar. 26, 2010) (calculating the statute of limitations as running from "the twentieth day after Plaintiffs sent their Notice of Rescission"); *Buick v. World Savings Bank*, 637 F. Supp. 2d 765, 771-72 (E.D. Cal. 2008) (noting that a lender's failure to honor Plaintiffs' request to rescind is a "distinct and actionable violation" of TILA, and that the one-year limitations period for a damage claim based on such violation begins to run at the time the lender failed to honor the rescission request); *see also Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1165 (9th Cir. 2002) (stating in dicta that "15 U.S.C. § 1640(e) provides the borrower one year from the refusal of cancellation to file suit" if the borrower provided the lender an effective rescission notice).

Plaintiffs mailed their notice of rescission on December 17, 2009, and at some point after that date, Defendants failed to honor that request (the court need not determine whether the date of violation was the December 18, 2009 auction or when the twenty-day period expired).[3] Thus, Plaintiffs timely filed their action for TILA damages on December 17, 2010.

**B.    Sufficiency of the TAC as to Each Defendant**

Defendants further argue that Plaintiffs' TILA damages claim is insufficiently pled because it fails to explain each Defendant's role in the failure to rescind. The court agrees with Defendants in part.

As to MERS, it is neither a creditor nor assignee as defined by TILA and therefore cannot be held civilly liable for alleged TILA violations. Specifically, TILA provides remedies for violations of TILA as against creditors, *see* 15 U.S.C. § 1640(a), and assignees of creditors, *see* 15 U.S.C. § 1641(a).

---

[3] The court further notes that even if the "occurrence of the violation" was Plaintiffs' rescission of the mortgage loan on December 17, 2009 (which it is not), the statute of limitations would nonetheless not begin to run until December 18, 2009. Statutes of limitations are generally computed using Federal Rule of Civil Procedure 6(a), which "exclude[s] the day of the event that triggers the period." *See Hernandez v. Caldwell*, 225 F.3d 435, 439 (4th Cir. 2000) (using Rule 6(a) to calculate statute of limitations); *Clark v. Bonded Adjustment Co.*, 176 F. Supp. 2d 1062, 1065 (E.D. Wash. 2001) ("The 'majority view' is that generally Rule 6(a) should be applied to federal statutes of limitations." (citing 4A Charles Allen Wright & Arthur R. Miller, Fed. Practice & Pro.: Civil 2d, § 1163 at 465 (2d ed.1987)); *see, e.g.*, *Rush v. Am. Home Mortg., Inc.*, 2009 WL 4728971, at*5 (D. Md. Dec. 3, 2009) (finding TILA damages claim based on loan origination was timely where the loan closed on April 3, 2006 and plaintiff brought her action on April 3, 2007).

TILA further defines a creditor as:

> [A] person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments of for which the payment of a finance charge is or may be required, and (2) is the person who the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such indebtedness, by agreement.

15 U.S.C. § 1602(f). As alleged in the TAC and as displayed in its exhibits, MERS merely acted as "nominee" for Countrywide; the TAC includes no allegations suggesting that MERS is a "creditor" as defined by TILA. *See, e.g.*, *Cannon v. U.S. Bank, NA*, 2011 WL 2117015, at *5 (D. Haw. May 24, 2011) (dismissing TILA claim against MERS with prejudice); *Gorospe v. Sec. Nat'l Mortg.*, 2011 WL 578844, at *6 (D. Haw. Feb. 8, 2011) (same); *see also Reyes v. WMC Mortg. Corp.*, 2012 WL 1067560, at *2 (N.D. Cal. Mar. 28, 2012) (dismissing TILA claim against MERS because it is not a "creditor"); *Stovall v. Nat'l Default Servicing Corp.*, 2011 WL 1103582, at *2 (D. Nev. Mar. 23, 2011) ("[P]laintiffs may not maintain their TILA claims against MERS because Plaintiffs have not alleged that MERS was either the creditor or an assignee of the creditor."). The court therefore GRANTS Defendants' Motion to Dismiss as to MERS.

As to Countrywide, the TAC asserts that Countrywide was the

original lender and subsequently assigned the mortgage loan to BONYM. *See* Doc. No. 29, TAC ¶¶ 12, 15. Thus, according to the TAC, Countrywide was no longer Plaintiffs' creditor at the time Plaintiffs sought rescission. Given that Countrywide was no longer Plaintiffs' creditor at the time of rescission, the TAC fails to plausibly explain how Countrywide could be liable for failing to honor a rescission that it could not honor in the first place. *See King v. Long Beach Mortg. Co.*, 672 F. Supp. 2d 238, 246-47 (D. Mass. 2009) ("Rescission in the TILA context, as envisaged by Congress, is a private and mutual process involving both the consumer and the creditor 'working out the logistics' of returning any property, monies and financial charges. . . . Rescission, therefore, only makes sense if exercised by the consumer . . . against the current creditor . . . .") (internal citations omitted). The court therefore GRANTS Defendants' Motion to Dismiss as to Countrywide.

Finally, as to BONYM, the court finds that the TAC alleges sufficient facts to state a plausible TILA damages claim against BONYM for failure to honor Plaintiffs' rescission of the mortgage loan. The TAC asserts that various TILA violations occurred during the consummation of the loan, extending Plaintiffs' ability to rescind the loan to three years from the date of the loan consummation. *See* Doc. No. 29, TAC ¶¶ 13-14. The TAC further asserts that Countrywide

assigned the mortgage loan to BONYM, and that Plaintiffs timely exercised their right to rescind by notifying BONYM via letter. *Id.* ¶¶ 15, 18. Finally, the TAC asserts that rather than honor Plaintiffs' rescission, BONYM proceeded with the foreclosure. *Id.* ¶ 18. In sum, these allegations assert a TILA damages claim against BONY on the basis that (1) TILA violations occurred in the consummation of the loan transaction; (2) BONYM was the current assignee of the mortgage loan at the time Plaintiffs sought rescission; and (3) BONYM failed to honor the rescission. The court therefore DENIES Defendants' Motion to Dismiss as to BONYM.

## V. CONCLUSION

Based on the above, the court GRANTS in part and DENIES in part Defendants' Motion to Dismiss the TAC. Remaining in this action is Plaintiffs' TILA damages claim against BONYM.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 4, 2012.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Abubo v. Bank of New York Mellon et al.*, Civ. No. 11-00312 JMS-BMK, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Third Amended Complaint