IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EDWARD YUZON ABUBO, and SARANNE KAGEL ABUBO, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) ) |
| | ) |
| THE BANK OF NEW YORK MELLON; COUNTRYWIDE HOME LOANS, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; BANK OF AMERICA, N.A.; and DOES 1-50. | ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

CIVIL NO. 11-00312 JMS-BMK

ORDER DENYING DEFENDANT
BANK OF NEW YORK MELLON'S
MOTION FOR SUMMARY
JUDGMENT

## <u>ORDER DENYING DEFENDANT BANK OF NEW YORK MELLON'S MOTION FOR SUMMARY JUDGMENT</u>

## I. <u>INTRODUCTION</u>

This action is again before the court after two prior dispositive Orders.

Defendant Bank of New York Mellon ("Defendant" or "BONYM") moves for

summary judgment on Plaintiffs Edward and Saranne Abubo's (the "Abubos" or

"Plaintiffs") only remaining Count -- a claim for damages under 15 U.S.C.

§ 1640(a) for BONYM's alleged failure to honor Plaintiffs' notice of rescission

under 15 U.S.C. § 1635.  Based on the following, the Motion is DENIED.

## II.  BACKGROUND

The court's two previous Orders have narrowed and refined the scope of this action, which arises from a January 22, 2007 refinancing transaction where Plaintiffs borrowed $1,375,000 from former Defendant Countrywide Home Loans, Inc. ("Countrywide"), secured by a promissory note and real property located in Hanalei, Hawaii (the "subject property").  *See Abubo v. Bank of N.Y. Mellon*, 2011 WL 6011787 (D. Haw. Nov. 30, 2011) ("*Abubo I*"); *Abubo v. Bank of N.Y. Mellon*, 2012 WL 2022327 (D. Haw. June 5, 2012) ("*Abubo II*").  The parties are familiar with those Orders, and the court need not repeat all of the factual background.  Instead, the court reiterates only the particular details of the transaction and of the court's prior rulings that are necessary to understand the context for this Motion.

### A.    Factual Background

In January 2007, a Countrywide loan officer solicited Plaintiffs to refinance their loan on the subject property.  Doc. No. 29, Third Amended Complaint ("TAC") ¶ 8.[1]  On January 22, 2007, Countrywide loaned Plaintiffs $1,375,000 for that purpose.  Doc. No. 67, Def.'s Concise Statement of Facts

---

[1]  Where a fact is not in dispute, the court cites directly to the TAC or to Plaintiffs' or Defendant's Concise Statements of Facts ("CSF").  Otherwise, the court identifies disputed issues of material fact, based on admissible evidence in the record, construed in the light most favorable to Plaintiffs.  *See, e.g.*, *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

("CSF") ¶ 1.  The loan was a "subprime," interest-only, adjustable rate loan with

an initial annual interest rate of 6.25%, requiring initial monthly payments of

$7,161.46.  Doc. No. 29, TAC ¶¶ 10-11.  Plaintiffs allege that they were given a

Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, disclosure form that

stated the wrong amount financed ($1,370,207.55, rather than $1,375,000).  *Id.*

¶ 14.  The TAC also alleges that Plaintiffs were not each provided with two

completed and signed copies of the Notice of Right to Cancel form as required

under TILA, and instead they were only given a single blank copy of the form.  *Id.*

¶ 13.

   BONYM has, however, produced a copy of a January 23, 2007 Notice

of Right to Cancel form with Plaintiffs' signatures and initials "acknowledg[ing]

receipt of two copies" of the Notice.  Doc. No. 67-6, Def.'s Ex. D.  Plaintiffs do

not dispute that they signed and initialed the form, but deny actually receiving

completed and signed copies of the Notices.  *See* Doc. No. 67-16, Def.'s Ex. N,

Edward Abubo Dep. at 116 ("That's my signature. . . .  My understanding is that I

should have been given this at the time of closing.  And I don't believe I was.");

Doc. No. 67-17, Def.'s Ex. O, Saranne Abubo Dep. at 112 ("I think it was

inaccurate but we signed it."); Doc. No. 77-1, Pls.' Decl. ¶ 7 ("Upon signing all of

the closing documents, we were not each provided with two completed and signed

copies of the Notice of Right to Cancel form[.]").[2]

From January 2007 through March 2009, Plaintiffs made regular monthly payments on their loan.  Doc. No. 67, Def.'s CSF ¶ 11.  In April, May, June, and August 2009, however, Plaintiffs failed to make their payments, and thus defaulted on their loan.  *Id.*  Accordingly, Bank of America (which had acquired Countrywide in the meantime) sent Notices of Intent to Accelerate to Plaintiffs in May and August 2009, but the default was not cured.  *Id.* ¶¶ 12-13.

The mortgage was assigned on October 12, 2009 by Mortgage Electronic Registration Systems, Inc. ("MERS") (as nominee for Countrywide) to BONYM, "acting as Trustee of the Alternative Loan Trust 2007-HY3 Mortgage Pass-Through Certificates, Series 2007-HY3," which is a "mortgage securitization trust and Pooling and Servicing Agreement."  Doc. No. 29, TAC ¶ 15; Doc. No. 77, Pls.' CSF ¶ 3.  The assignment to BONYM was recorded in the Hawaii Bureau of Conveyances on October 28, 2009.  Doc. No. 29-6, TAC Ex. 6.  After being assigned the Mortgage, BONYM initiated non-judicial foreclosure proceedings on the subject property.  Specifically, on or about October 13, 2009, BONYM issued a

---

[2] BONYM contends that, at the time, it was Countrywide's practice to provide the escrow company with one copy of a Notice of Right to Cancel form, and that the escrow agent was supposed to complete the form and provide the borrowers with two copies.  Doc. No. 67, Def.'s CSF ¶ 3.  These details are discussed more fully below when addressing whether BONYM is entitled to a "bona fide error" defense under 15 U.S.C. § 1640(c).

"Notice of Mortgagee's Intention to Foreclose Under Power of Sale," which set an auction date of December 18, 2009.  Doc. No. 67, Def.'s CSF ¶¶ 14-15.

On December 17, 2009, Plaintiffs attempted to cancel the January 22, 2007 loan transaction by sending a cancellation letter from their counsel, Gary Dubin, by certified mail to "all current and former parties to the mortgage loan contract."  Doc. No. 77, Pls.' CSF ¶ 5; Doc. No. 77-6, Pls.' Ex. 5.  Although many of the Defendants received the letter *after* the auction was to be held, *see* Doc. No. 77-7, Pls.' Ex. 6, the letter also indicates that a copy was hand delivered on December 17, 2009 to the office of David Rosen, Esq., who was identified on the foreclosure notice as counsel for BONYM.  Doc. No. 77-6, Pls.' Ex. 5.

Despite Plaintiffs' cancellation letter, the foreclosure auction proceeded on December 18, 2009.  Doc. No. 67, Def.'s CSF ¶ 15.  At the auction, BONYM purchased the subject property for $1,021,500.00, *id.* Ex. L at 2, with a "credit bid."  Doc. No. 77, Pls.' CSF ¶ 6.  On March 10, 2010, BONYM recorded a quitclaim deed to obtain title to the subject property.  Doc. No. 67, Defs.' CSF ¶ 16 & Ex. M.  BONYM then filed an ejectment action against Plaintiffs in state court. The TAC alleges that the Plaintiffs "have since prevailed in that ejectment action, which was dismissed for lack of subject matter jurisdiction."  Doc. No. 29, TAC

¶ 21.[3]  Undisputed bank records indicate that no regular payments have been made on the loan since July 2009.  Doc. No. 67-10, Def.'s Ex. H.

## B.     Procedural Background

A year after their attempted cancellation, Plaintiffs filed a December 17, 2010 Complaint in the Circuit Court of the First Circuit, State of Hawaii ("State Court").  Doc. No. 15, State Ct. Docket, at 3.  On April 11, 2011, Plaintiffs filed a First Amended Complaint in State Court, and Defendants removed the action to this court on May 12, 2011.  Doc. No. 1, Notice of Removal.  Plaintiffs then filed a Second Amended Complaint ("SAC") on August 12, 2011, Doc. No. 18, which the court dismissed on November 30, 2011.  *See Abubo I*, 2011 WL 6011787 at *1.

*Abubo I* dismissed all Counts of the SAC, including Plaintiffs' claim for rescission of the refinancing transaction under 15 U.S.C. § 1635(a).[4]  The court,

---

[3]  A review of the Hawaii state judiciary "Hoohiki" system (providing on-line access to docket information on Hawaii Circuit and Family court cases) indicates that BONYM filed an ejectment action against the Abubos on March 31, 2009, which was dismissed for lack of subject matter jurisdiction on July 19, 2011.  *See Bank of N.Y. Mellon v. Abubo*, No. 5RC10-1-000336 (Haw. Cir. Ct.) (available at http://hoohiki2.courts.state.hi.us/jud/Hoohiki/JSAPM51.jsp? casenumber=5RC101000336) (last accessed Oct. 15, 2013).  BONYM, however, filed another ejectment action against the Abubos on August 24, 2011, and it remains pending.  *See Bank of N.Y. Mellon v. Abubo*, No. 5CC11-1-000199 (Haw. Cir. Ct.) (available at http://hoohiki2.courts. state.hi.us/jud/Hoohiki/JSAPM51 (last accessed Oct. 15, 2013)).

[4]  Section 1635(a) provides a borrower "the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the [required TILA disclosures]."  If the required disclosures were not provided, however, the right of rescission extends to "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first."  15 U.S.C. § 1635(f).  *Abubo I* dismissed

(continued...)

however, granted Plaintiffs "leave to file a TILA claim for *damages* based upon the allegedly wrongful refusal to rescind the transaction after Defendants received the December 17, 2009 notice of cancellation."  2011 WL 6011787, at *11.

Accordingly, on December 15, 2011, Plaintiffs filed the TAC, asserting a single claim entitled "TILA Cancellation and Rescission (Failure to Rescind)."  Doc. No. 29, TAC at 8-9.  It alleges:

> [B]ecause Defendants ignored [the cancellation] notice, failed to rescind the subject mortgage loan, and instead moved forward with an alleged nonjudicial foreclosure to Plaintiffs' detriment, Plaintiffs are entitled under TILA, including [15 U.S.C.] Sections 1640 and 1641 thereof, to recover damages from Defendants based upon their wrongful failure to rescind the subject mortgage loan.

*Id.* ¶ 24.  Section 1640(a) provides in pertinent part, that

> any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title . . . with respect to any person is liable to such person in an amount equal to the sum of --

---

[4](...continued)
Plaintiffs' claim for rescission with prejudice because of the intervening sale of the property. 2011 WL 6011787, at *11 (citing *Takushi v. BAC Home Loans Servicing, L.P.*, 814 F. Supp. 2d 1073, 1080-81 (D. Haw. 2011)).  This court recognized the issue but left unresolved whether the rescission claim was also time barred, where the Abubos' *Complaint* was filed more than three years after the transaction but their *notice* of cancellation was given within the three year period. *Id.*  As explained below, the Ninth Circuit has since determined that merely notifying a lender within three years of the transaction is insufficient -- a complaint seeking rescission under § 1635 must be *filed* within three years of consummation.  *See McOmie-Gray v. Bank of Am. Home Loans*, 667 F.3d 1325, 1328-29 (9th Cir. 2012).  Thus, the court follows and incorporates *McOmie-Gray* as an additional basis (*i.e.*, independent of *Takushi*) for dismissing Plaintiffs' § 1635(a) rescission claim from the SAC.

(1) any actual damage sustained by such person as a result of the failure;

(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, . . . or (iv) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000. . . . [and]

(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 or 1638(e)(7) of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court[.]

In turn, 15 U.S.C. § 1641(a), regarding liability of assignees, provides in part that an action "which may be brought against a creditor may be maintained against an assignee of such creditor" (such as BONYM), if the violation "is apparent on the face of the disclosure statement[.]" *Id.* Such an action for damages under § 1640(a) may be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).

On June 5, 2012, *Abubo II* dismissed the § 1640(a) claim against MERS and Countrywide, but allowed it to proceed against BONYM. 2012 WL 2022327, at *4-5. Among other matters, *Abubo II* rejected the argument that the claim was time-barred under § 1640(e), ruling that the one-year limitations period did not begin to run until BONYM failed to respond to the December 17, 2009

8

cancellation letter (and by statute, BONYM had twenty days within which to respond).  *Id.* at *3 (citing 15 U.S.C. § 1635(b)).  That is, the action -- having been filed on December 17, 2010 -- was timely filed within a year of BONYM's alleged failure to honor the notice of rescission.

On May 22, 2013, BONYM filed its Motion for Summary Judgment as to Plaintiffs' sole remaining claim seeking damages under § 1640(a).  Doc. No. 66.  Plaintiffs filed their Opposition on August 26, 2013, Doc. No. 76, and BONYM filed its Reply on August 30, 2013.  Doc. No. 78.[5]  The court heard the Motion on September 16, 2013.  After the hearing, on September 17, 2013, the court requested supplemental briefing as to a "bona fide error" defense under 15

---

[5]  BONYM also filed formal objections to some of Plaintiffs' evidence, primarily arguing that certain evidence is irrelevant under Federal Rules of Evidence 402 and 403.  Doc. No. 80. For example, it contends that this statement is irrelevant:  "After working with Mr. Pelosi, our loan file was thereafter transferred to an individual named Kendall Melton, who was also a loan officer with Countrywide in Honolulu."  *Id.* at 2 (quoting Doc. No. 77-1, Pls.' Decl. ¶ 3).

BONYM's relevancy objections are DENIED.  Many of the statements are background information.  In any event, the court refuses to strike these assertions on relevancy grounds when raised in opposition to a summary judgment motion.  Relevancy objections serve little, if any, purpose where the court is considering whether a non-movant has created a genuine issue of material fact under Federal Rule of Civil Procedure 56.  *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself . . . .  A court can award summary judgment only when there is no genuine dispute of material fact.  It cannot rely on irrelevant facts, and thus relevance objections are redundant.").  *See also, e.g.*, *Perez-Denison v. Kaiser Found. Health Plan of the Nw.*, 868 F. Supp. 2d 1065, 1088 (D. Or. 2012) (same) (following *Burch*); *Harris Technical Sales, Inc. v. Eagle Test Sys., Inc.*, 2008 WL 343260, at *3 (D. Ariz. Feb. 5, 2008) (same).

U.S.C. § 1640(c).[6]  Doc. No. 83.  Supplemental memoranda were filed on

September 30, 2013.  Doc. Nos. 84, 85.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who

fails to make a showing sufficient to establish the existence of an element essential

to the party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of

Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of

informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine

issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's*

---

[6]  BONYM raised the bona fide error defense in its Motion, but Plaintiffs' counsel did not address it in Plaintiffs' initial Opposition -- hindering the court's task in properly addressing the issues raised in BONYM's Motion, and necessitating supplemental briefing.  The court expects more from Plaintiffs' counsel, who appear frequently before this court in the specialized area of foreclosure defense, and who have submitted substantive memoranda from that perspective in several other cases.  Nevertheless, the supplemental briefing gave both parties a full opportunity to argue the applicability of the bona fide error defense under the present facts.

*Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

# IV.  **DISCUSSION**

## A.    **Genuine Issues of Material Fact Remain as to Whether the Notice of Right to Cancel Was Properly Delivered to Plaintiffs**

Both 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(b)(1) require a creditor to "deliver" two copies of a Notice of Right to Cancel to each person to whom credit is extended.  Plaintiffs contend they were not properly provided with such notices, that they exercised their right to cancel on December 17, 2009, and that BONYM is liable for damages under § 1640(a) for failure to honor their rescission notice.[7]

BONYM does not dispute that, if indeed Countrywide failed to deliver the necessary copies of the Notice of Right to Cancel, then Plaintiffs' right to rescind would extend from three days to three years.  *See Balderas v. Countrywide Bank, N.A.*, 664 F.3d 787, 789 (9th Cir. 2011) ("If the [borrowers] can prove that they were not allowed to keep two completed and accurate copies of the disclosure notice, the bank will have forfeited the benefit of the three-day cooling off period and the [borrowers] would have three years to rescind.") (citing *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 701-02 (9th Cir.

---

[7]  Plaintiffs have abandoned their separate claim that the disclosure of the "amount financed" was wrong -- the principal was $1,375,000 but the "amount financed" was indeed (as disclosed) $1,370,207.55, which reflects the subtraction of a prepaid finance charge of $4,792.45.  *See* Doc. No. 67-9, Def.'s Ex. G.

1986)).  "'To insure that the consumer is protected . . . [TILA and accompanying regulations must] be absolutely complied with and strictly enforced.'"  *Semar*, 791 F.2d at 704 (quoting *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir. 1983)); *see also, e.g.*, *Rubio v. Capital One Bank*, 613 F.3d 1195, 1199 (9th Cir. 2010) ("In applying TILA and its implementing regulations, we 'require absolute compliance by creditors,' and '[e]ven technical or minor violations of the TILA impose liability on the creditor[.]'") (citations omitted).

BONYM, however, contends there was no violation at all.  As explained above, BONYM has produced a signed January 23, 2007 copy of Plaintiffs' Notice of Right to Cancel, where Plaintiffs acknowledged that they received two copies of a Notice of Right to Cancel.  Doc. No. 67-6, Def.'s Ex. D. But this acknowledgment only creates a "rebuttable presumption" that the necessary copies were "delivered."  *See* 15 U.S.C. § 1635(c) ("Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.").

To rebut this presumption, Plaintiffs declare under penalty of perjury that, although they signed the document, they did not each actually receive two

completed and signed copies.  *See* Doc. No. 77-1, Pls.' Decl. ¶ 7 ("Upon signing

all of the closing documents, we were not each provided with two completed and

signed copies of the Notice of Right to Cancel form[.]").  And although their

deposition testimony is equivocal, it is not necessarily inconsistent with their

declaration.  *See* Doc. No. 67-16, Def.'s Ex. N, Edward Abubo Dep. at 116

("That's my signature. . . .  My understanding is that I should have been given this

at the time of closing.  And I don't believe I was."); Doc. No. 67-17, Def.'s Ex. O,

Saranne Abubo Dep. at 112 ("I think it was inaccurate but we signed it.").[8]

       Consistent with summary judgment standards, ample case law

indicates that Plaintiffs' evidence is enough to rebut the presumption of delivery.

In their Opposition, Plaintiffs rely on Hawaii authority, *Hawaii Community*

*Federal Credit Union v. Keka*, 94 Haw. 213, 11 P.3d 1 (Haw. 2000), which held

---

[8]  The court denies BONYM's request to disregard the Abubos' August 26, 2013 declaration under the "sham affidavit" rule, as being inconsistent with their prior deposition testimony.  *See, e.g.*, *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.").  At their depositions, the Abubos admitted that they signed a notice of right to cancel, but each denied (although perhaps not adamantly) receiving two completed copies of the form.  *See* Doc. No. 67-16, Def.'s Ex. N, Edward Abubo Dep. at 116 ("My understanding is that . . . [the signed notice] should have been a part of  . . . the loan package [I] took home"); Doc. No. 67-17, Def.'s Ex. O, Saranne Abubo Dep. at 112 ("I don't know [if the notice was accurate when I signed it] . . .  I think looking backwards, I think it was inaccurate but we signed it.").  Given such denials at their depositions, any discrepancies between their deposition testimony and their declaration do not justify striking the declaration as being a "sham."  *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009) ("[O]ur cases have emphasized that the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit.").

that "the Kekas' affidavits and declaration raised a genuine issue of material fact as to whether the Credit Union timely provided the Kekas with the disclosures required by TILA." *Id.* at 225, 11 P.3d at 13. BONYM attempts to distinguish *Keka*, contending that its persuasive value is diminished as an opinion from a state, not a federal, court.

In this regard, however, *Keka* is completely consistent with a myriad of federal authorities, including persuasive decisions by judges of this court. *See, e.g.*, *Cavaco v. Mortg. Elec. Registration Sys., Inc.*, 2011 WL 1565979, at *4 (D. Haw. Apr. 25, 2011) ("Cavaco's affidavit creates a genuine issue of fact as to whether she received copies of the TILA disclosures, as Cavaco denies receipt and describes her loan closing procedure as having given her no time to read what she was signing, implying that she did not know she was acknowledging receipt of the TILA disclosures."); *Rodrigues v. Newport Lending Corp.*, 2010 WL 4960065, at *6 (D. Haw. Nov. 29, 2010) ("Plaintiffs' declaration rebuts the presumption of delivery, creating a genuine issue of fact as to whether Plaintiffs were given copies of the disclosures required under TILA.") (citing *Stutzka v. McCarville*, 420 F.3d 757, 762 (8th Cir. 2005), and *Iannuzzi v. Am. Mortg. Network, Inc.*, 727 F. Supp. 2d 125, 136 (E.D.N.Y. 2010) ("Numerous courts applying the rebuttable presumption of 15 U.S.C. 1635(c) have held that sworn statements by the

15

borrowers asserting that they did not receive the required [notices and disclosures] . . . , despite signed acknowledgments to the contrary, are sufficient to preclude summary judgment.")).  *Cf. Balderas*, 664 F.3d at 790 (holding, at a motion to dismiss stage, that a signed acknowledgment "only proved that the [borrowers] signed the document in [the lender's] possession. . . .  The [borrowers] allege in their complaint that they did not, in fact, get a properly prepared notice.  If they testify to that effect at trial, the trier of fact could believe them, despite their signed statement to the contrary.").[9]

And numerous courts outside this jurisdiction follow the same rule. *See, e.g.*, *Hanlin v. Ohio Builders & Remodelers, Inc.*, 212 F. Supp. 2d 752, 762 (S.D. Ohio 2002) ("the presumption is rebutted by testimony of the obligor that the disclosures were not given, even when the disclosure statement is produced.") (citations omitted); *Stone v. Mehlberg*, 728 F. Supp. 1341, 1354 (W.D. Mich. 1989) ("The Stones' affidavit testimony rebutted this presumption.") (citations

---

[9]  *Balderas* emphasized that TILA requires *delivery* of the Notice of Right to Cancel, which requires "a permanent physical transfer."  664 F.3d at 790.  The Complaint in *Balderas* plausibly alleged that the plaintiffs were given documents to sign that were then taken away.  Instead, "[a]ll they were left with were incomplete documents that didn't tell them how long they had before they could renege on the loans."  *Id.*  "If [the lender] ended up with the only copies of the properly filled out documents then [the lender] didn't comply with TILA because it never 'deliver[ed] two copies of the notice of the right to rescind.'"  *Id.* (quoting 12 C.F.R. § 226.23(b)(1).  Similarly, the TAC here alleges (and Plaintiffs have declared under penalty of perjury) that "we were only given a single blank copy" of the notice of right to cancel.  Doc. No. 77-1, Pls.' Decl. ¶ 7; Doc. No. 29, TAC ¶ 13.

omitted)); *Jobe v. Argent Mortg. Co.*, 2008 WL 450432, at *4 (M.D. Pa. Feb. 15, 2008) ("Some courts have found that a borrower's testimony that he or she did not receive the TILA disclosure statement rebutted the presumption of delivery and created a question of fact.") (citations omitted).[10]

Given this great weight of authority, and construing the evidence in the light most favorable to Plaintiffs, there is a genuine issue of material fact as to whether the required copies under TILA of the Notice of Right to Cancel were properly delivered to Plaintiffs.

## B.    BONYM Is Not Entitled to a "Bona Fide Error" Defense

Next, BONYM raises a "bona fide error" defense to liability under 15 U.S.C. § 1640(c).  Section 1640(c) provides:

---

[10]  In its Reply, BONYM relies on three cases -- *Parker v. Long Beach Mortgage Co.*, 534 F. Supp. 2d 528, 536 (E.D. Pa. 2008), *Sibby v. Ownit Mortgage Solutions, Inc.*, 240 Fed. Appx. 713, 717 (6th Cir. 2007), and *McCarthy v. Option One Mortgage Corp.*, 362 F.3d 1008, 1012 (7th Cir. 2004) -- for the proposition that a borrower's testimony is insufficient to rebut the presumption of compliance where there is written acknowledgment of receipt of a Notice of Right to Cancel.

But *Parker* concerned *trial* testimony, where the trier of fact disbelieved a borrower, not a summary judgment motion where disputes of fact are construed in favor of the non-movant. *See* 534 F. Supp. 2d at 536 ("The Parkers' claims, even if they were credible, which they are not, that they do not remember receiving the required notices are insufficient to overcome the presumption that they received the required number of copies of the [TILA] notices."). Likewise, the Sixth Circuit's unpublished disposition in *Sibby* (which reasoned that "Plaintiff's deposition testimony that she only received one copy is insufficient to rebut this presumption," 240 Fed. Appx. at 717) relied on a statement in a case involving the credibility of trial testimony. *See id.* (citing *Williams v. First Gov't Mortg. & Inv. Corp.*, 225 F.3d 738, 751 (D.C. Cir. 2000)). And, regardless, the court follows the Ninth Circuit's reasoning in *Balderas*, applied at a summary judgment stage in the authorities cited above.

A creditor or assignee may not be held liable in any action brought under this section or section 1635 of this title for a violation of this subchapter if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.  Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programing, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error.

BONYM contends that, even assuming two copies of the complete Notice of Right to Cancel were not delivered to each Plaintiff, it cannot be liable because such error was an unintentional "bona fide error."  BONYM produces evidence that Countrywide (now Bank of America) had a standard practice to provide its escrow agent with a copy of the Notice of Right to Cancel, and "[t]hereafter, it was the responsibility of the escrow agent to complete the [notice] at closing . . . and then provide two copies to each borrower[.]"  Doc. No. 67, Def.'s CSF ¶ 3; Doc. No. 67-1, Jenkins Decl. ¶ 6.  Thus, BONYM argues essentially that any failure to deliver the required number of copies of the Notice of Right to Cancel was the escrow company's fault, and not Countrywide's mistake -- it was purportedly an unintentional "bona fide error" under § 1640(c).  The court disagrees.

A two-part test applies.  BONYM has the burden to demonstrate

18

(1) "that the error was unintentional and clerical in nature," and (2) that "it had

procedures reasonably adapted to prevent the type of error which occurred."

*Davison v. Bank One Home Loan Servs.*, 2003 WL 124542, at *7 (D. Kan. Jan. 13,

2003) (numerous citations omitted).  *See also Palmer v. Wilson*, 502 F.2d 860, 861

(9th Cir. 1974) ("The defendants' omissions . . . were not the result of clerical

errors, which are the only violations [§ 1640(c)] was designed to excuse.");

*Hutchings v. Beneficial Fin. Co. of Or.*, 646 F.2d 389, 391 (9th Cir. 1981) ("The

Act . . . provides creditors with a defense for clerical errors.  The issue is whether

[the creditor] maintained 'procedures reasonably adapted to avoid any such

error.'") (citing § 1640(c) and *Ives v. W. T. Grant Co.*, 522 F.2d 749, 757 (2d Cir.

1975)).

"The Act does not specify the type of system a creditor must maintain

to avoid liability."  *Hutchings*, 646 F.2d at 391.

> It is clear, however, that Congress required more than
> just a showing that a well-trained and careful clerk made
> a mistake.  On the other hand, a showing that the first
> well-trained clerk's figuring was checked by a second
> well-trained clerk or that one clerk made the calculations
> on an adding machine and then checked this by looking
> up the figures on a table would satisfy Congress'
> requirements.

*Id.* (quoting *Mirabel v. Gen. Motors Acceptance Corp.*, 527 F.2d 871, 878-79 (7th

Cir. 1976), *overruled on other grounds by Brown v. Marquette Sav. & Loan Ass'n*,

686 F.2d 608 (7th Cir. 1982)).  This bona fide error defense requires an "extra step," something more than just carefully delegating responsibility to an escrow company:

> Congress required more than just the maintenance of procedures which were designed to provide proper disclosure[s]. . . .  Rather, it required procedures designed to avoid and prevent the errors which might slip through procedures aimed at good faith compliance. This means that the procedures which Congress had in mind were to contain an extra preventative step, a safety catch or a rechecking mechanism.

*Mirabal*, 537 F.2d at 878-79.

With these standards in mind, the court explains why the bona fide error defense does not apply.

### 1.    *The Alleged Error Was Not "Clerical in Nature"*

At the first step, persuasive authority indicates that the failure to deliver the necessary copies of a Notice of Right to Cancel is not "clerical in nature," rendering the bona fide error defense unavailable.  *See, e.g.*, *Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 251 (3d Cir. 1980) (citing cases holding that a complete failure to disclose, such as failing to give a borrower a copy of a required document, does not constitute a "clerical" error for purposes of the bona fide error defense); *Wells Fargo Bank v. Jaaskelainen*, 407 B.R. 449, 458 (D. Mass. 2009) (rejecting the lender's assertion of a § 1640(c) defense, where the lender required

20

its agent to provide each borrower with two copies of a Notice of Right to Cancel and required the agent to verify it had done so, concluding that "the failure to give each Debtor two copies of the [Notice of Right to Cancel] at the closing was not 'clerical'"); *Horton v. Country Mortg. Servs., Inc.*, 2010 WL 55902, at *5 (N.D. Ill. Jan. 4, 2010) (rejecting that the failure to deliver two copies of a Notice of Right to Cancel can be a bona fide clerical error under § 1640(c), but instead dismissing the damages claim because the error was "not apparent on the face of the disclosure statements," as necessary for imposing liability on an assignee) (citing cases).

Rather, providing proper disclosures is at TILA's very core. *See, e.g.*, *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 54 (2004) ("Congress enacted TILA . . . to 'assure a meaningful disclosure of credit terms.'") (quoting 15 U.S.C. § 1601(a)); *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1118 (9th Cir. 2009) ("[T]he concept of 'meaningful disclosure' . . . animates TILA.") (quoting *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 568 (1980)).  And these basic TILA disclosure rights certainly include proper notice of TILA's rescission provisions. *See, e.g.*, *Jones v. E*Trade Mortg. Corp.*, 397 F.3d 810, 812 (9th Cir. 2005) ("The purpose of [TILA] is to ensure that users of consumer credit are informed as to the terms on which credit is offered them.  To that end, the law requires creditors to 'clearly and conspicuously disclose' borrowers' rights to

rescind a home mortgage loan.") (citing § 1601); *Davison*, 2003 WL 124542, at \*6 n.12 ("TILA's requirement of two rescission notice copies to each obligor is not a mere technicality.  Effective exercise of the right to rescind obviously depends upon the delivery of one copy of the rescission form to the creditor and the retention by the obligor of the other copy.") (quoting *Stone v. Mehlberg*, 728 F. Supp. 1341, 1353 (W.D. Mich. 1989)).

Stated differently, the alleged failure to comply with this basic notice provision "was of an 'informational' nature, not merely 'clerical'" in nature.  *In re Ralls*, 230 B.R. 508, 520 (Bankr. E.D. Pa. 1999).  *Thomka* explained that the bona fide error defense was originally enacted "in response to fears that simple clerical mistakes in mathematical calculations of the lease financial charge and annual percentage rate would create unavoidable liability."  619 F.2d at 251.  *Thomka* then rejected the defense where an agreement failed to provide several mandated disclosures in a "clear and conspicuous manner," *id.* at 249, reasoning:

> The present failure of the underlying agreement to conform in numerous respects to the requirements of the Act is surely not a "clerical" error and thus does not fall within [§ 1640(c)].  *See Hinkle v. Rock Springs Nat'l Bank*, 538 F.2d 295, 297 (10th Cir. 1976) (not allowing clerical defense where there was a complete failure to disclose in the documents provided); *Palmer*, 502 F.2d at 861 (omission of certain terms in standard agreement not type of clerical error contemplated by Section 1640(c)); *Jumbo v. Nester Motors, Inc.*, 428 F. Supp. 1085, 1086

> (D.C. Ariz. 1971) (failure of the lessor to give the
> plaintiff a copy of the lease finance agreement on the day
> of the sale "is not the kind of clerical error exempted
> from liability by 15 U.S.C. s 1640(c)").

619 F.2d at 251.  *See also Jaaskelainen*, 407 B.R. at 458; *Horton*, 2010 WL 55902,

at *5.

### 2.      *The 1980 Amendment to § 1640(c) Has No Effect*

In response, BONYM argues in supplemental briefing that § 1640(c)

was amended in 1980 specifically to narrow creditors' civil liability and "eliminate

litigation which is based on violations of a purely technical nature."  Doc. No. 84,

Def.'s Suppl. Mem. at 7 (quoting S. Rep. 96-73, 1980 U.S.C.C.A.N. 280, 284).

Prior to the Truth in Lending Simplification and Reform Act, 94 Stat. 180, Pub. L.

96-221, Title VI, § 615  (Mar. 31, 1980), the bona fide error defense provided:

> A creditor may not be held liable in any action brought
> under this section or section 1635 of this title [TILA] if
> the creditor shows by a preponderance of the evidence
> that the violation was not intentional and resulted from a
> bona fide error notwithstanding the maintenance of
> procedures reasonably adapted to avoid any such error.

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 589

2010) (quoting § 1640(c) as enacted in 1968).  Congress amended § 1640(c) in

1980, adding the following text:

> Examples of a bona fide error include, but are not limited
> to, clerical, calculation, computer malfunction and

23

> programing, and printing errors, except that an error of
> legal judgment with respect to a person's obligations
> under this subchapter is not a bona fide error.

*See* Pub. L. 96-221, Title VI, § 615.  According to statements in legislative history, this amendment meant to "'clarify' the meaning of TILA's bona fide error defense 'to make clear that it applies to mechanical and computer errors, provided they are not the result of erroneous legal judgment as to the act's requirements.'"  *Jerman*, 559 U.S. at 591 n.12 (quoting S. Rep. No. 96-73, at 7-8, *reprinted in* 1980 U.S.C.C.A.N 280, 284-86).  That is, "the amendment 'was intended merely to clarify what was then the prevailing view, that the bona fide error defense applies to clerical errors, not including errors of legal judgment.'"  *Id.* (quoting Lockhart, 153 A.L.R. Fed. 211-12 § 2[a] (1999)).

BONYM thus attempts to distinguish the authorities cited above (which often limit their description of a bona fide error as "clerical") because they (1) either pre-date the 1980 amendment to § 1640(c), and thus refer to the old version; or (2) are wholly derived from pre-amendment authorities.  *See* Doc. No. 84, Def.'s Suppl. Mem. at 4.  BONYM argues that "non-clerical" errors are permitted under § 1640(c), given the added phrase "but are not limited to" clerical error.  BONYM reads the statute as juxtaposing the types of errors -- those that are "clerical or mechanical in nature" (which are "bona fide"), as opposed to those

24

"which result from erroneous legal judgments as to the act's requirements" (which are not).  *Id*. at 5.  It thus contends that "there are but two types of TILA errors: those which result from 'erroneous legal judgments as to the act's requirements;' and everything else."  *Id*.  Given that interpretation, BONYM argues that, "to grant Defendant's Motion and dismiss the Complaint, this Court needs to only acknowledge that the alleged error *is not* the result of 'erroneous legal judgments as to the act's requirements.'"  *Id*. at 7.

BONYM's reading, however, assumes too much.  Under its interpretation, any unintentional error (other than a legal error) -- that is, "everything else" -- would be a bona fide error under § 1640(c).  But this reading would swallow the rule.  BONYM's interpretation would vitiate an accepted premise of TILA -- followed for over thirty years after the 1980 amendment to § 1640(c) -- that "[e]ven technical or minor violations of the TILA impose liability on the creditor."  *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989) (citing *Semar*, 791 F.2d at 704); *Balderas*, 664 F.3d at 789 (same); *Amonette v. IndyMac Bank, F.S.B.*, 515 F. Supp. 2d 1176, 1181-82 (D. Haw. 2007) (same).  Binding caselaw reiterates that "[t]o effectuate TILA's purpose, a court must construe '[TILA's] provisions liberally in favor of the consumer' and require *absolute compliance* by creditors."  *Hauk*, 552 F.3d at 1118 (quoting *In re Ferrell*, 539 F.3d

25

1186, 1189 (9th Cir. 2008) (emphasis added); *see also, e.g.*, *Rubio*, 613 F.3d at 1199 (same).

And in fact, contrary to BONYM's interpretation, "the [§ 1640(c)] defense applies in a very narrow range of fact situations." *In re Boganski*, 322 B.R. 422, 427 (9th Cir. BAP 2005); *see also In re Ralls*, 230 B.R. 508, 519 (Bankr. E.D. Pa. 1999) ("[S]trict liability in favor of consumers subjected to TILA violations is released only in narrow circumstances, strictly construed [given] [t]he limited nature of the § 1640(c) defense[.]"); *Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 328 (7th Cir. 1999) ("Subject to narrow exceptions, 'hypertechnicality reigns' in the application of TILA.") (citation omitted); *Cf. McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011) (characterizing the parallel bona fide error defense under the Fair Debt Collection Practices Act as "narrow").

BONYM's reading also conflicts with two principles of statutory interpretation: *noscitur a sociis* ("a word is known by the company it keeps")[11] and *ejusdem generis* ("a general term following more specific terms means that the things embraced in the general term are of the same kind as those denoted by the

---

[11] *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995).

specific terms").[12]   Under the 1980 amendment, "bona fide error" includes errors

such as "clerical, calculation, computer malfunction and programing and printing

errors."  And the phrase "including, but not limited to" is not a license to expand

the list of errors beyond those examples of very minor, technical errors.  The

enumerated list simply describes errors -- consistent with caselaw -- that are

"clerical in nature."  *See, e.g.*, *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500,

520 (3d Cir. 2012) ("Under the principle of *ejusdem generis*, '[i]t is widely

accepted that general expressions such as "including, but not limited to" that

precede a specific list of included items should not be construed in their widest

context, but apply only to persons or things of the same general kind or class as

those specifically mentioned in the list of examples.'") (citation omitted).

In sum, the 1980 amendment to § 1640(c) does not help BONYM.  Its

legislative history confirms that Congress meant to "narrow a creditor's liability to

only those disclosures which are of central importance in understanding a credit

transaction's cost or terms."  S. Rep. No. 96-73. at 7, *reprinted in* 1980

U.S.C.C.A.N. at 285.  Proper compliance with the Notice of Right to Cancel

provisions is surely "of central importance" to TILA, and is thus not purely

---

[12]   *United States v. Baird*, 85 F.3d 450, 453 (9th Cir. 1996) (citing 2A Norman J. Singer, *Sutherland-Statutory Construction* §§ 47.16, 47.17 (5th ed. 1992)).

technical.  The alleged error in failing to deliver the Notices of Right to Cancel was not "clerical or mechanical" in nature.  Thus, the bona fide error defense does not apply.

### 3.    *Countrywide Had No Re-Checking Mechanism*

Moreover, even if the error could have been "bona fide" under § 1640(c), the defense fails at the second step -- nothing in the evidence provided to the court regarding Countrywide's procedures indicates it adopted a "re-checking" or "extra step" to verify compliance.  As cited above, although Countrywide required its escrow agent to deliver the required Notices of Right to Cancel, the bona fide error defense is not met by a lender simply having a practice of delegating compliance with TILA to someone else and instructing that agent about the legal requirements.  *See Jaaskelainen*, 407 B.R. at 458 (rejecting the lender's assertion of a § 1640(c) defense, where the lender required its agent to provide each borrower with two copies of a notice of right to cancel and required the agent to verify it had done so, reasoning that "[t]he verification . . . is insufficient because it places the rechecking mechanism, if it could even be called that, in the person who made the mistake in the first place"); *see also Abel v. Knickerbocker Realty Co.*, 846 F. Supp. 445, 449 (D. Md. 1994) (rejecting bona fide error defense where creditor "relied entirely upon the settlement attorney for

28

the accuracy of the disclosure and employed no procedures of its own to check the accuracy of the disclosures").

BONYM argues that Countrywide's use of a written acknowledgment of receipt of the Notice of Right to Cancel functions as a "rechecking mechanism." Doc. No. 84, Def.'s Suppl. Mem. at 1.  The written acknowledgment, so the argument goes, confirms that the Notice of Right to Cancel was delivered to the borrowers.  This argument, however, is circular -- the use of a written acknowledgment is already contemplated in TILA, both in the statute itself (15 U.S.C. § 1635(c)), and in Regulation Z (12 C.F.R. § 226.17(a)(1) n.37, providing that "disclosures may include an acknowledgment of receipt[.]").  But, as analyzed above, TILA specifically provides that such a written acknowledgment creates only a rebuttable presumption of delivery.  15 U.S.C. § 1635(c).  If the written acknowledgment could suffice as a "rechecking" mechanism (the "extra step") that is necessary for the bona fide error defense, it would *not* create only a "rebuttable presumption" of delivery -- it would confirm delivery.  Such a reading is contrary to § 1635(c).[13]

_____

[13]  Written acknowledgments can themselves be misleading.  *See, e.g.*, *Rodash v. A1B Mortg. Co.*, 16 F.3d 1142, 1146 (11th Cir. 1994) (concluding that an "Acknowledgment of Receipt of Receipt of Notice of Right to Cancel and Election not to Cancel," signed on the day of closing, violated TILA, in part because a practice of "placing the acknowledgment and the waiver on the same page" and "in the same boilerplate paragraph" could be confusing, and

(continued...)

In short, BONYM has no valid § 1640(c) defense.  Accordingly,

BONYM is not entitled to summary judgment on this ground.

## C.    A Section 1640(a) Claim is Not Time Barred

Next, relying on *McOmie-Gray v. Bank of America Home Loans*, 667

F.3d 1325, 1328-29 (9th Cir. 2012), BONYM argues that the § 1640(a) claim for

*damages* is time-barred under § 1635(f).[14]  The court disagrees.

*Abubo I* dismissed Plaintiffs' § 1635(a) rescission claim because the

property had been sold.  *See* § 1635(f) (providing that the right to rescission

expires "three years after the date of consummation of the transaction *or upon the*

*sale of the property, whichever occurs first*.") (emphasis added).  *Abubo I* did not

reach whether the § 1635(a) rescission claim was also time-barred, but did

recognize a split in authority among district courts at the time as to whether a

§ 1635(a) rescission *action* must be *filed* within three years, even if a request for

(or notice of) cancellation was provided within that period.  *See Abubo I*, 2011 WL

6011787, at *11.  Nevertheless, *Abubo I* allowed Plaintiffs to file a distinct

_____

[13](...continued)
consumers could reasonably think they needed to waive the right to rescind to consummate the
mortgage transaction), *limited by Smith v. Highland Bank*, 108 F.3d 1325 (11th Cir. 1997), and
*abrogated on other grounds by Veale v. Citibank*, F.S.B., 85 F.3d 577 (11th Cir. 1996).

[14]  The § 1640(a) claim is otherwise timely under § 1640(e) as having been brought
within a year of the alleged violation.  *See Abubo II*, 2012 WL 2022327, at *4-5.

§ 1640(a) *damages* claim, thus allowing such a claim to relate back to the filing date of December 17, 2010 (which was within a year of BONYM's alleged failure to honor the rescission notice). *Id.* at *12.

After *Abubo I*, *McOmie-Gray* resolved the question, holding that an action seeking § 1635(a) rescission must be *filed* within § 1635(f)'s three-year statute of repose. 667 F.3d at 1328-29. But *McOmie-Gray* provides no basis for this court to conclude that the separate claim for *damages* under § 1640(a) should be dismissed. That is, *McOmie-Gray* did not overrule *Abubo I* -- nothing in *McOmie-Gray* necessarily bars a distinct claim for damages under § 1640(a) for failure to honor a notice of rescission (even where a rescission claim under § 1635(a) is time barred). Indeed, *McOmie-Gray* did not rule on § 1640(a) at all.

Moreover, the Ninth Circuit long ago held that damages under § 1640 and rescission under § 1635 are distinct remedies:

> In *Eby v. Reb Realty, Inc*. [495 F.2d 646, 651-52 (9th Cir. 1974)], [it] rejected defendants' contention that plaintiffs cannot successfully pursue both damages under section 1640 and rescission under section 1635. No election of remedies is required. The liability provision of section 1640 is a 'civil penalty,' which, unlike section 1635, is not intended to make the borrower whole.

*Palmer*, 502 F.2d at 861. And recent authority from outside the Ninth Circuit also specifically confirms that a § 1640(a) damages claim (based on an alleged failure

to honor a notice of rescission) may stand, even if a rescission claim under

§ 1635(a) itself is time-barred.  *See Keiran v. Home Capital, Inc.*, 720 F.3d 721,

729 (8th Cir. 2013) ("Even though [the borrowers'] claim for actual rescission is

not timely . . . the plaintiffs' claims for money damages based upon the banks'

failure to rescind is, at the very least, cognizable.").

      If Plaintiffs ultimately prove liability, the question still remains as to

how to measure Plaintiffs' actual damages under § 1640(a) for BONYM's failure

to honor the notice of rescission, where rescission is no longer possible.  Such

questions regarding damages, however, are not before the court.  Further, even if

Plaintiffs can prove *no* actual damages, § 1640(a) also provides for statutory

damages of (1) "twice the amount of any finance charge in connection with the

transaction" and (2) "not less than $400 or greater than $4,000."  15 U.S.C.

§ 1640(a)(2(A) & (B).  In short, whether or not rescission itself under § 1635(a) is

time-barred, Plaintiffs' claim under § 1640(a) for damages may still proceed.

**D.**    **Genuine Issues of Material Fact Remain as to Whether Plaintiffs Had the Ability to Tender Loan Proceeds in December 2009**

      To determine on the merits whether BONYM erred in not honoring

Plaintiffs' December 18, 2009 notice of rescission, it requires not only assessing

whether TILA was actually violated in January 2007, but also whether Plaintiffs

could have rescinded at all (an inquiry BONYM did not make in December 2009).

BONYM argues that Plaintiffs lacked the ability to tender the loan proceeds and undo the loan transaction for purposes of rescission.  *See, e.g.*, *Beazie v. Amerifund Fin., Inc*., 2011 WL 2457725, at *7 (D. Haw. June 16, 2011) ("[R]escission should be conditioned on Plaintiff's tender of the loan proceeds.  Requiring Plaintiff to prove an ability to tender ensures that rescission is more than a hollow remedy and that the parties will be placed in the positions they held before consummation of the loan transaction.").

The case presents an unusual procedural posture.  The question is not whether Plaintiffs can tender the loan proceeds *now* -- any claim for rescission under § 1635(a) has been dismissed with prejudice.  The question is whether they could have tendered in December 2009, when they sent their notice of cancellation.  Plaintiffs' ability to tender in 2009 is difficult to assess now -- four years after the fact -- in part because BONYM ignored the cancellation notice in the first place.  In this regard, the evidence indicates that Plaintiffs did not want to, and perhaps had no real intention to, actually rescind the transaction at that time.  The timing (one day before the foreclosure sale), indicates they may have been primarily motivated only to stop the sale.  But the question at this point, and for purposes of a § 1640(a) damages claim, is whether they had the *ability* to have tendered in 2009, and not how rescission might have been accomplished or whether they

desired to sell their property if that is what needed to be done at that time to actually rescind.[15]

Ultimately, however, the evidence regarding Plaintiffs' ability to tender in December 2009 is mixed.  Construing the evidence in Plaintiffs' favor, there is at least some indication that they could have tendered.  *See, e.g.*, Doc. No. 77-1, Pls.' Decl. ¶ 18 ("[W]e had income of about $5,000 per month. . . .  [O]ur son and his wife, and their children lived in the subject property with us, and contributed substantially to household expenses."), ¶ 19 ('[T]he subject property was worth more than was necessary to rescind the loan. . . .  [T]here was sufficient equity in the property to satisfy the tender amount, which we could have borrowed against, or we could have sold the property and used the proceeds to complete rescission."), ¶¶ 20-21 ("[I]n 2009, Saranne owned another real property, free and clear. . . .  The equity in that property could also have been borrowed against to obtain sufficient funds to rescind the subject mortgage loan.").[16]  Accordingly,

---

[15]  Even if, as BONYM argues, Plaintiffs cannot tender now, it does not mean they did not have the ability to do so in 2009.  Again, Plaintiffs' current ability to tender does not establish their ability in 2009.

[16]  As with BONYM's "sham affidavit" argument regarding Plaintiffs' evidence that they were not delivered copies of the Notices of Cancellation, the court also rejects BONYM's request to disregard Plaintiffs' Declaration as to their ability to rescind in 2009.  BONYM argues that Plaintiffs admitted in their depositions that they could not rescind in 2009, but points to evidence that they could not make their payments, or that they did not want to sell their home.  *See, e.g.*, Doc. No. 67-16, Def.'s Ex. N, Edward Abubo Dep. at 80 ("Q.  Did you have the ability

(continued...)

given genuine issues of material fact, the court DENIES the Motion as to whether

Plaintiffs had the ability to tender in 2009.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendant Bank of New York Mellon's

Motion for Summary Judgment is DENIED.  Genuine issues of material fact

remain as to whether Countrywide complied with TILA.  BONYM has not met its

summary judgment burden to demonstrate that it is entitled to a bona fide error

defense under 15 U.S.C. § 1640(c).  And questions of fact likewise remain as to

///

///

///

///

///

///

---

[16](...continued)
at that time to make the payment that was then due of $17,108.46?  A.  No, I don't believe I
did.").  Indeed, Plaintiffs were equivocal as their ability to tender at that time.  *See, e.g.*, *id.* at 97
("Q.  . . . Did you have the ability in December 2009 to pay back, then, to the bank the 1.375
[million] loan amount?  A.  No, *not unless we were to sell the property*.") (emphasis added).
Again, any discrepancies between deposition testimony and Plaintiffs' declaration do not justify
striking the declaration.  *See Van Asdale*, 577 F.3d at 998-99  ("[O]ur cases have emphasized
that the inconsistency between a party's deposition testimony and subsequent affidavit must be
clear and unambiguous to justify striking the affidavit.").

Plaintiffs' ability to tender the loan proceeds for purposes of rescission in December 2009.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 15, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Abubo v. Bank of N.Y. Mellon et al.*, Civ. No. 11-00312 JMS-BMK, Order Denying Defendant Bank of New York Mellon's Motion for Summary Judgment